IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

97 OCT 30 AM 10: 30
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
OCT 31 1997

BILL'S DOLLAR STORES, INC.,           )
                                      )
        Plaintiff,                    )
                                      )
vs.                                   )   CIVIL ACTION NUMBER
                                      )
OLON BELCHER, et al.,                 )   97-C-0859-W
                                      )
        Defendants.                   )

## MEMORANDUM OF OPINION DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Olon and Hazel Belcher, doing business as Olon Belcher Properties, Ltd. ("the Belchers") have moved for partial summary judgment based on Ala. Code § 35-4-6, which provides

> Leases for more than twenty years shall be void for the excess over said period unless the lease or a memorandum thereof is acknowledged or approved as required by law on conveyances of real estate and recorded within one year after execution in the office of the judge of probate in the county in which the property leased is situated.

It is undisputed that effective as of November 1, 1977, the Belchers leased to W.E. Walker Stores, Inc. ("Walker") a building in the Olon Heights Shopping Center in Centreville (Bibb County), Alabama, for occupancy as a "Bill's Dollar Store." The leasehold term was fifteen years, at a monthly rate of $2,166.67. The lease also contains a provision giving to Walker a right of renewal "for the same rental and on the same terms and conditions" for three

additional terms of five years each. On these facts, the Belchers contend that the lease at issue in this case will end by operation of law as of November 1, 1997.

Viewing the evidence in a light most favorable to Walker's successor in interest, Bill's Dollar Stores ("BDS"), the motion for partial summary judgment must be denied.

I

Upon expiration of the original lease in 1992, BDS exercised its option to renew the lease for the first five-year term.

But a year later, BDS filed in Delaware a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. As a result of the bankruptcy, the Belchers and BDS negotiated an amendment of the original lease, "in consideration of the mutual covenants and agreements." Tab 2, Affidavit of Robert E. Gerber.

The amendment <u>decreased</u> the rent by $1,500 per month for the remainder of the first five-year term and each of the two remaining option terms. In consideration, BDS assumed the lease - which it would otherwise have had the right to repudiate. At that time, Bill's Dollar Store was the only operating business in the Olon Hills Mall, so that the Belchers had a powerful incentive to

enter into this new agreement concerning the rent. On the other hand, by assuming the lease, BDS obligated itself to pay the claim of the Belchers ahead of other creditors, and it surrendered its right to assert the cap on lease rejection damages if the lease had been subsequently rejected.

On August 29, 1994, the Bankruptcy Court approved the assumption of the Centreville lease; and on September 7, 1994, BDS confirmed its assumption of the lease.

As noted, when BDS assumed the revised lease in 1994, the original lease had already terminated. The parties regarded the 1994 assumption as a new lease at a new rental rate. The terms of the original lease were ratified by the assumption.

At all material times thereafter, BDS has continued to occupy the subject property at the new stipulated rental rate. The Belchers have accepted the rental payments for the past three years.

In May 1997, BDS gave timely notice of its intention to renew the lease. The Belchers have continued to accept the rents since that time.

II

The court concludes that the present lease between the Belchers and BDS commenced in 1994. For in that year, the parties

negotiated a new lease agreement for valuable consideration. Without question, BDS could have repudiated the lease in that year; and it is unlikely that the Bankruptcy Court would have compelled the Belchers to continue leasing the subject property to the financially impaired BDS.

Under the statute on which the Belchers rely, the 1994 negotiated lease must end by the year 2014.

### III

In any event, by accepting rents under the 1994 lease and by failing to timely invoke Ala. Code § 35-4-6, the Belchers are estopped from voiding the lease. They have accepted the benefits of the lease they now challenge and BDS has fully performed under it. Their challenge must fail under the teachings of *Eastwood Mall Associates, Ltd. V. All Amer. Bowling Corp.*, 518 So.2d 44 (Ala. 1987).

In *Eastwood Mall*, the parties had entered into a 20-year lease in 1960, with a renewal option to tenant All American for two terms of ten years each. When the original term expired, All American notified the new landlord that it wished to exercise the option. The option was exercised; and the renewal agreement stated that it was made in consideration of "the mutual promises of the parties" and in exercise of the first of two 10-year options

4

contained in the original lease. The property was acquired by new owners four years into the first option period, and two years thereafter, the new owners sought to void the lease based on Section 35-4-6. In the intervening two years, they had accepted rents from All American. In the ensuing litigation, the trial court held that Section 35-4-6 was not implicated because the exercise of the option constituted a new agreement; and that in any event, the new owners were estopped from denying the lease. In upholding the trial court, the Alabama Supreme Court wrote:

> The plain purpose of § 35-4-6 is to provide notice to innocent purchasers of property who otherwise might purchase property and then discover an unrecorded lease on the property that deprives them of the benefits of ownership for up to 99 years. {citing case]. In the instant case, [the new owners] had actual notice of the lease and its terms; thus, the purpose of § 35-4-6 was satisfied and they should not be permitted to use this statute to the detriment of All American.
>
> [The new owners] argue that the doctrine of estoppel cannot be invoked to uphold an agreement that is void. ... However, this court has held that estoppel may be applicable to prevent the assertion of a defense that an agreement is void if the promisor has accepted the benefits of the agreement and the promisee has fully performed. *Dean v. Myers*, 466 So.2d 952 (Ala. 1985). In the instant case, [the new owners] accepted the rental payments for approximately two years, and it appears from the record that All American fully performed all of its obligations under the lease. Accordingly, we hold that estoppel applies in this case.

By separate order, the motion for partial summary judgment shall be denied.

DONE this ___27th___ day of October, 1997.

*[signature]*
UNITED STATES DISTRICT JUDGE
U. W. CLEMON